IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | **JURY TRIAL DEMAND** |
| ) | |
| CORRECT CARE SOLUTIONS, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Kevicia Cody ("Cody") who was adversely affected by such practices. Specifically, plaintiff, Equal Employment Opportunity Commission (the "Commission") alleges that defendant, Correct Care Solutions, LLC. ("Defendant") discharged Cody because of her disability, in violation of the ADA.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

1

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Carolina. This lawsuit is being filed in the Columbia Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred within the Columbia Division.

PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times Defendant has continuously been a Kansas Corporation doing business in the State of South Carolina and the City of Columbia, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

CONDITIONS PRECEDENT TO FILING LAWSUIT

7. More than thirty days prior to the institution of this lawsuit, Cody filed a charge with the Commission alleging violations by Defendant of Title I of the ADA.

8. On August 6, 2015, the Commission issued to Defendant a Letter of

Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On September 2, 2015, the Commission issued to Defendant a Notice of Failure of Conciliation.

12. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

13. In April 2010, Cody began experiencing intermittent seizures. Cody's seizures substantially limit and interfere with her neurological system and brain functions. In 2015, Cody was diagnosed with epilepsy.

14. Cody takes medication that ameliorates the effects of her seizures. When Cody has a seizure, the seizure lasts anywhere from a few seconds to several minutes. Cody is able to resume her normal activities shortly after she experiences a seizure.

15. During the period relevant to the allegations in this complaint, Cody had approximately six to eight seizures per year even though she was taking medication. Since her official diagnosis of epilepsy in 2015 and a change of medication that resulted, Cody has been seizure free.

16.     From on or about January 7, 2013 through and including January 31, 2013, Defendant engaged in unlawful employment practices at its facility in Columbia, South Carolina, in violation of Section 102(a) of Title I of the ADA, 42 U.S.C. § 12112(a), by forcing Cody to take medical leave and ultimately discharging Cody because of her disability, as described more fully below.

17.     Defendant hired Cody as a Licensed Practical Nurse on an "as needed" basis on or about April 2, 2012, and promoted Cody to a full-time employee around September 17, 2012. Cody performed her job in a manner that met the reasonable expectations of Defendant.

18.     On or around December 29, 2012, Cody was hospitalized for a medical impairment. During her hospitalization, Cody was taken off of her seizure medication and experienced a grand mal seizure as a result. During the three days that Cody was hospitalized, Defendant was aware that Cody was absent from work because of her hospitalization.

19.     On or about January 3, 2013, Cody provided Defendant with a return to work note from the hospital that was signed by a social worker. The note indicated that Cody had been hospitalized and could return to work immediately with no restrictions. Defendant's Director of Nursing refused the note, purportedly because it was not signed by a physician. Defendant required that Cody provide additional information related to her hospital stay.

20.     On or about January 3, 2013, Cody provided the Director of Nursing with a copy of her discharge instructions from the hospital. The discharge instructions stated the reason for Cody's hospitalization. Despite receipt of this additional information, Defendant's Director of Nursing continued to question Cody about the reason for her hospitalization. In response to the questioning by the Director of Nursing, Cody stated that her hospitalization was related to a

4

seizure. Defendant's Director of Nursing then required that Cody provide a note from her treating physician clearing her to return to work.

21.     On January 3, 2013, Cody provided Defendant a signed note from the neurologist who treated her for seizures. The note cleared Cody to work with certain restrictions, including that Cody could not work at heights and could not work in a position wherein she might be a danger to herself or others if she lost consciousness. Defendant told Cody to return to work on January 7, 2013.

22.     On January 7, 2013, Cody returned to work and worked for approximately two hours before Defendant's Hospital Administrator informed Cody that Defendant required Cody to have her physician complete a "Job Analysis" form for further analysis and clarification of whether Cody could safely work within the conditions of the detention center. Defendant instructed Cody that she would have to stop working until the form was completed and reviewed by Defendant's human resources personnel. Defendant placed Cody on unpaid personal medical leave effective January 7, 2013, with an anticipated return date of January 30, 2013.

23.     On January 15, 2013, Cody provided the completed "Job Analysis" form to Defendant. The form stated that Cody was cleared to return to work but could not work at heights, operate heavy machinery, or work around bodies of water, and was signed by Cody's neurologist. Despite receipt of this form, Defendant did not allow Cody to return to work, but rather discharged Cody.

24.     After her discharge, Cody received a letter from Defendant dated February 25, 2013, stating the Cody was discharged in essence, because of her restriction related to working at heights. Specifically, Defendant indicated that Cody needed to be able to climb stairs and work

on a second floor to perform the essential functions of her job. Cody was fully capable of both climbing stairs and working on the second floor in order to perform her job duties

25. Based on the allegations above, Defendant forced Cody to take medical leave and discharged Cody because of her disability in violation of the ADA.

26. The effect of the practices complained of above has been to deprive Cody of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability.

27. The unlawful employment practices complained of above were intentional.

28. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cody.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining the Defendant, its officers, agents, employees, attorneys, successors, assigns and all persons in active concert or participation with them, from discharging its employees with disabilities who require leave as an accommodation, and engaging in any other employment practices that discriminate on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Kevicia Cody whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Cody or front pay in lieu thereof, and lost and/or reduced employee benefits.

D.	Order Defendant to make Cody whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, job search expenses and medical expenses, in amounts to be determined at trial.

E.	Order Defendant to make Cody whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, in amounts to be determined at trial.

F.	Order Defendant to pay Cody punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.	Grant such further relief as the Court deems necessary and proper in the public interest.

H.	Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated this the 19th day of November 2015.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS

7

Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NE
Washington, D.C. 20507


LYNETTE A. BARNES (N.C. Bar No. 19732)
Regional Attorney

KARA GIBBON HADEN
Supervisory Trial Attorney


**s/Rachael S. Steenbergh**
RACHAEL S. STEENBERGH
(Fed. Bar No. 10867)
Trial Attorney
Email: Rachael.steenbergh@eeoc.gov
129 W. Trade St., Suite 400
Charlotte, NC 28202
Tel: (704) 954-6472
Fax: (704) 954-6412

3:15-cv-04655-MGL     Date Filed 11/19/15     Entry Number 1     Page 8 of 8